```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    IN AND FOR THE DISTRICT OF DELAWARE

 3                              - - -
     UCB, INC., UCB PHARMA GMBH,
 4   RESEARCH CORPORATION               :      CIVIL ACTION
     TECHNOLOGIES, INC., and            :
 5   HARRIS FRC CORPORATION,            :
                                        :
 6              Plaintiffs,             :      (Consolidated)
     v                                  :
 7                                      :
     ACCORD HEALTHCARE, INC., et al.,   :
 8                                      :      NO. 13-1206-LPS
                Defendants.
 9                              - - -

10                        Wilmington, Delaware
                          Friday, October 30, 2015
11                        Telephone Conference

12                              - - -

13   BEFORE:        HONORABLE LEONARD P. STARK, Chief Judge

14                              - - -
      APPEARANCES:
15

16           MORRIS NICHOLS ARSHT & TUNNELL, LLP
             BY:  JACK B. BLUMENFELD, ESQ., and
17                ETHAN HALLER TOWNSEND, ESQ.

18                and

19           COVINGTON & BURLING
             BY:  GEORGE F. PAPPAS, ESQ., and
20                JEFFREY B. ELIKAN, ESQ.
                  (Washington, District of Columbia)
21
                       Counsel for Plaintiff
22

23

24                             Brian P. Gaffigan
                               Registered Merit Reporter
25
```

```
 1   APPEARANCES:  (Continued)

 2
                  SHAW KELLER, LLP
 3                BY:  JOHN W. SHAW, ESQ.

 4                      and

 5                COHEN & GRESSER, LLP
                  BY:  RICHARD G. GRECO, ESQ., and
 6                     GURPREET (RAY) SINGH WALIA, ESQ.
                       (New York, New York)
 7
                          Counsel for Accord Healthcare, Inc.,
 8                        and Intas Pharmaceuticals, Ltd.

 9
                  BAYARD, P.A.
10                BY:  SARA BUSSIERE, ESQ.

11                      and

12                CARLSON CASPERS VANDENBURGH LINDQUIST & SHUMAN
                  BY:  JEFFER ALI, ESQ., and
13                     SARAH M. STENSLAND, ESQ.
                       (Minneapolis, Minnesota)
14
                          Counsel for Alembic Pharmaceuticals Ltd.
15                        and Alembic Limited in Civil Action
                          No. 13cv1207-LPS
16

17                PHILIPS GOLDMAN & SPENCE, P.C.
                  BY:  MEGAN C. HANEY, ESQ.
18
                        and
19
                  WINSTON & STRAWN, LLP
20                BY:  GEORGE C. LOMBARDI, ESQ., and
                       MAUREEN L. RURKA, ESQ., and
21                     JOHN R. McNAIR, ESQ.
                       (Chicago, Illinois)
22
                        and
23

24

25
```

```
 1    APPEARANCES:  (Continued)

 2

 3                  WINSTON & STRAWN, LLP
                    BY:  CHARLES B. KLEIN, ESQ.
 4                       (Washington, District of Columbia)

 5                            Counsel for Amneal Pharmaceuticals, LLC,
                              Amneal Pharmaceuticals of New York, LLC,
 6                            Aurobindo Pharma Ltd., Aurobindo Pharma
                              USA, Inc., Breckenridge Pharmaceutical,
 7                            Inc., Vennoot Pharmaceuticals, LLC,
                              Sun Pharma Global FZE, Sun Pharmaceutical
 8                            Industries, Ltd., Watson Laboratories,
                              Inc. - Florida (n/k/a Actavis
 9                            Laboratories FL, Inc.), Watson Pharma,
                              Inc. (n/k/a Actavis Pharma, Inc.) and
10                            Actavis, Inc

11                  MORRIS JAMES, LLP
                    BY:  KENNETH L. DORSNEY, ESQ.
12
                              and
13
                    TAFT STETTINIUS & HOLLISTER, LLP
14                  BY:  RICHARD T. RUZICH, ESQ., and
                         IAN SCOTT, ESQ.
15                       (Chicago, Illinois)

16                            Counsel on behalf of Apotex Corp. and
                              Apotex Inc.
17

18                  YOUNG CONAWAY STARGATT & TAYLOR, LLP
                    BY:  ADAM W. POFF, ESQ.
19
                              and
20
                    WILSON SONSINI GOODRICH ROSATI, P.C.
21                  BY:  DAVID S. STEUER, ESQ.
                         (Palo Alto, California)
22
                              and
23
                    WILSON SONSINI GOODRICH ROSATI, P.C.
24                  BY:  NICOLE STAFFORD, ESQ.
                         (Austin, Texas)
25
                              and
```

1   APPEARANCES:  (Continued)

2

3                   WILSON SONSINI GOODRICH ROSATI, P.C.
                    BY:  YONGDAN LI, ESQ.
                         (Los Angeles, California)

4

5                            Counsel for Mylan Pharmaceuticals Inc.
                             and Mylan Inc.

6

7                   MURPHY & LANDON
                    BY:  FRANCIS J. MURPHY, ESQ.

8                        and

9                   LOCKE LORD, LLP
                    BY:  MICHAEL J. GAERTNER, ESQ., and
10                       DAVID B. ABRAMOWITZ, ESQ.
                         (Chicago, Illinois)

11

12                           Counsel for Zydus Pharmaceuticals (USA)
                             Inc. and Cadila Healthcare Limited

13

14                               - oOo -

15                         P R O C E E D I N G S

16                   (REPORTER'S NOTE:  The following pretrial

17   conference was held in open court, beginning at 9:02 a.m.)

18                   THE COURT:  Good morning, everyone.

19                   (The attorneys respond, "Good morning, Your Honor.")

20                   THE COURT:  I'll have you put your appearances

21   on the record for us, please.

22                   MR. BLUMENFELD:  Good morning, Your Honor.

23                   THE COURT:  Good morning.

24                   MR. BLUMENFELD:  Jack Blumenfeld from Morris

25   Nichols for the plaintiff.  I'm here today with George

1    Pappas and Jeff Elikan from Covington & Burling and Ethan

2    Townsend from Morris Nichols.

3              THE COURT:  Okay.  Welcome to all of you.

4              MR. PAPPAS:  Good morning.

5              MR. ELIKAN:  Good morning.

6              THE COURT:  Good morning to all of you.

7              Good morning.

8              MR. POFF:  Good morning, Your Honor.  Adam Poff

9    for Mylan.  With me, we have David Steuer, Nicole Stafford,

10   and Yongdan Li from Wilson Sonsini.

11             THE COURT:  Welcome to all of you.  Welcome back.

12             MS. HANEY:  Good morning, Your Honor.

13             THE COURT:  Good morning.

14             MS. HANEY:  Megan Haney from Phillips Goldman &

15   Spence on behalf of Aurobindo, Amneal, Actavis, Breckenridge

16   and Sun.  And with me today are George Lombardi --

17             THE COURT:  Good morning.

18             MS. HANEY:  -- Maureen Rurka, Charles Klein, and

19   J.R. McNair from Winston & Strawn.

20             THE COURT:  Welcome to all of you.

21             MR. DORSNEY:  Good morning, Your Honor.

22             THE COURT:  Good morning.

23             MR. DORSNEY:  On behalf of Apotex, Ken Dorsney

24   of Morris James.  With me from Taft Stettinius & Hollister,

25   I have Ian Scott and Rich Ruzich.

1              MR. SCOTT:  Good morning, Your Honor.

2              MR. RUZICH:  Good morning, Your Honor.

3              THE COURT:  Good morning.

4              MS. TIRADENTES:  Good morning, Your Honor.

5    Vanessa Tiradentes from Bayard on behalf of Defendant

6    Alembic Pharmaceuticals, Ltd.  With me, I have Sara Bussiere

7    from our office; and Jeff Ali and Sarah Stensland from

8    Carlson Caspers.

9              THE COURT:  Okay.  Welcome.

10             MR. ALI:  Good morning, Your Honor.

11             MR. SHAW:  Good morning, Your Honor.  John

12   Shaw for the Accord, Intas parties.  I'd like to introduce

13   Richard Greco and Ray Walia from Cohen & Gresser.

14             THE COURT:  Good morning.  Welcome to you.

15             MR. GRECO:  Good morning.

16             MR. MURPHY:  Good morning, Your Honor.  Frank

17   Murphy of Murphy & Landon.  I have with me today Michael

18   Gaertner and David Abramowitz from Locke Lord in Chicago.

19   We represent Zydus and Cadila.

20             THE COURT:  Welcome to you.

21             Welcome again and good morning to everyone.

22   We're here for a pretrial conference for a pretrial that is

23   scheduled to begin on November 9th.  I have looked through

24   the pretrial order and the attached materials and mostly

25   looked in vain for things that you are arguing about so I'm

1    very pleased with that.  So necessarily my agenda is pretty

2    short this morning, and I will give you all an opportunity

3    to raise any other issues with me, but what I wanted to make

4    sure to cover and what we will start with is how long is it

5    trial going to be.

6              I'll tell you what the specific windows are that

7    I have open right now on the trial dates, we'll talk just a

8    little bit about post-trial briefing, and I think you had a

9    dispute about whether exhibits that are being used for

10   cross-examination need to be disclosed in advance.

11             So with that, let me start on the amount of

12   time you have a dispute there.  I'm inclined to go with

13   the smaller number, but I'm happy to hear I guess it is

14   defendants that are asking for more time.  So if someone

15   wishes to be heard on the defense side for that, just come

16   to the podium for us please.

17             MS. RURKA:  Yes, Your Honor.  Maureen Rurka on

18   behalf of five defendants that I probably won't name for you

19   right now.

20             I think we're a little concerned about there

21   are a lot of witnesses in this case.  What I think we would

22   propose is that we have, I think we have a four day window

23   that week of the 9th.  The 9th, 10th.

24             THE COURT:  We won't meet on the 11th.  It's a

25   federal holiday.

1          MS. RURKA:  Right.

2          THE COURT:  If need be, I can be available the

3    following Monday, if need be.  I hope we can do it in four

4    days but, if we can't, I'll bring you back on Monday.

5          MS. RURKA:  I think that would be our proposal,

6    that we try to get it done in four days.  And we get the

7    witnesses done in four days and, if need be, we can come

8    back for closing arguments on the following Monday, which

9    would end up being probably about 20 to 30 hours of trial

10   time.

11         THE COURT:  All right.  The way I do it for

12   management purposes is give you a specific number of hours,

13   and then I try to keep my days as open as I can so that you

14   can use as much of that time during those windows, but the

15   important part from your perspective I think is that I give

16   you the number of hours.

17         So as I recall, the plaintiffs are saying

18   13 hours a side is enough regardless of which days we meet

19   on.  Do you have argument that 13 for your side is not

20   enough time?

21         MS. RURKA:  Yes, Your Honor.  I think we are a

22   little bit concerned that 13 wouldn't be enough given the

23   number of witnesses in this case.  I think there are seven

24   plaintiffs' witnesses on the witness list and there are four

25   on our side.  So given the number of witnesses, I think 30

```
 1    is probably a more reasonable number, total hours, 15 hours

 2    a side.

 3                    THE COURT:  How do you anticipate the examinations

 4    being done from the defense side?

 5                    MS. RURKA:  What we propose is most witnesses

 6    will be handled by one attorney only.  There is one witness

 7    where there are some divided issues in obviousness,

 8    secondary considerations and prima facie obviousness, and

 9    that one witness I think we would end up having two

10    attorneys cross-examining that witness, but for the most

11    part it would be one attorney per witness.

12                    THE COURT:  And one opening and one closing?

13                    MS. RURKA:  Yes, and one opening/one closing.

14                    THE COURT:  And it is true that infringement is

15    not being contested at this point; correct?

16                    MS. RURKA:  Correct.

17                    THE COURT:  Is there anything else you want to

18    say about timing?

19                    MS. RURKA:  That's it.

20                    THE COURT:  No.  Okay.  Is there anybody on the

21    plaintiffs' side?

22                    MR. BLUMENFELD:  Your Honor, the reason we

23    proposed the 26 hours, 13 per side, was just looking at the

24    case now with no infringement issue, I'm not sure that I

25    agree with the number of witnesses.
```

1          My understanding is that the defendants have

2     three witnesses and we have six witnesses.  It's a total of

3     nine.  Seven of them are experts.  And so we don't see any

4     reason why we can't finish in 26 hours.  Whether we can get

5     to closings on Friday, whether you want to do them at some

6     time after the trial we leave totally to you.  But I certainly

7     thing, and I think Ms. Rurka agrees, we can get the evidence

8     in between the 9th and the 13th.

9          THE COURT:  Okay.

10         MR. BLUMENFELD:  Thank you.

11         THE COURT:  Thank you.  Is there any response?

12         MS. RURKA:  Yes, Your Honor.  I apologize, I

13    misstated.  I did misstate the number of witnesses, but I

14    think we're in agreement that we can, we should be able to

15    get the witnesses done for sure that week.  And if we need

16    extra time for closing, that's the only thing we would ask

17    for.

18         THE COURT:  All right.  Well, I'm going to

19    split the difference on this one.  I think plaintiffs are

20    proposing 13 and now the defendants are proposing 15.  I'll

21    give you 14 hours a side.

22         I think any of those numbers is reasonable and

23    appropriate and you will be able to get it done certainly in

24    the 14 hours per side.  Even the 15 asked for today by the

25    defendants is an improvement over what was in the pretrial

1    order, so I appreciate that.

2              I do think I need to probably allow a little bit

3    of extra time, that is why I'm going up to the 14, given the

4    large number of defendants that are in the case.  Of course,

5    defendants will be expected to coordinate their examinations

6    and the presentations along the lines they have suggested,

7    but I've been persuaded to go up to the 14 hour limit.

8              I will put this specific schedule in an order,

9    but just so you know the sort of maximum window I have

10   available for beginning and ending the trial days.

11             On Monday the 9th, I am currently available from

12   8:30 until as late as 6:00.

13             On Tuesday the 10th, from 8:30 to 4:30.

14             On Wednesday the 11th, as I indicated, there

15   will be no trial due to the holiday.

16             On Thursday, November 12th, I'm busy in the

17   morning so I'm only available between 12:30 and 6:00.  That

18   is on Thursday.

19             On Friday the 13th, I'm available from 9:00

20   until 5:00.

21             Then on Monday the 16th, I have some things

22   scheduled, but if we're not done, I will move them around

23   and we'll get this trial done on Monday, and I'll be

24   available until as late as 6:00, but we'll make sure that we

25   get done no later than Monday the 16th.

1           I try to keep the breaks relatively short:

2    Ideally about 15 minutes in the morning, 15 minutes in the

3    afternoon, and lunch of around 30 minutes.  But because it

4    is a bench trial, sometimes other things come up and I need

5    to deal with them and I make you wait a little bit longer

6    than I would like to, but I will do my best to avoid that.

7    So 14 hours per side.

8           In terms of, there was a dispute I think as to

9    the lengths of the openings and the closings, I'm not going

10   to impose any minimum or maximum on the length of openings

11   or closings, nor are you obligated to do either of those.  I

12   find the openings generally helpful.  I find the closings

13   generally helpful.  I won't hold it against you if you chose

14   not to use your time for one or both of those.

15          The 45 minutes is probably a pretty good target

16   for a very effective opening and closing.  I'm not telling

17   you anything you don't know, but you have 14 hours.  It's

18   your 14 hours.  If you want to spend however many of them on

19   opening or closing, I'm not going to cut you off.  That is

20   up to you.

21          Are there any questions about timing and when

22   we're going to meet, Mr. Blumenfeld?

23          MR. BLUMENFELD:  No, Your Honor.

24          THE COURT:  No.  Okay.  Is there anything from

25   the defense?

1          MS. RURKA:  No, Your Honor.

2          THE COURT:  There was this dispute at paragraph

3    89 about exhibits to be used solely for impeachment or

4    cross-examination and whether you want to disclose them to

5    one another.  If that is still is dispute, let me hear from

6    the plaintiffs first on that.

7          MR. BLUMENFELD:  Your Honor, I think we have

8    either resolved this morning or largely resolved this issue.

9          I mean I think it's been the standard practice

10   and Your Honor's Order and the rules that you disclose

11   cross-examination exhibits.  We did that.

12         We discussed it with Ms. Rurka this morning.

13   She said they may not have any additional exhibits.  They

14   may have one or two.  And I think the way we left it is if

15   you have one or two, just come to us, and we can talk about

16   it, but as a concrete matter, I think we're in agreement

17   that the exhibits are essentially closed except for the one

18   or two or handful that they may come to us with, and we'll

19   take a look at them and deal with them.  But I don't think

20   Your Honor has to do anything this morning.

21         THE COURT:  Okay.  Ms. Rurka?

22         MS. RURKA:  I agree, Your Honor.

23         THE COURT:  Okay.  Thank you for that.

24         In terms of post-trial briefing, I'm not going

25   to make a final decision on the timing or the length or even

1    how many briefs until at or near the end of the trial.  I'll

2    have a better understanding then and we can talk about that.

3              My inclination just at a general level, I

4    probably will one more than one brief from each side.  That

5    is generally helpful for me.  And I want the briefing to be

6    done as quickly and as succinctly as it can reasonably be

7    done but without ruining anybody's holidays unnecessarily.

8              So those are the principles I'll have in mind,

9    but we'll talk about the specifics towards the end of trial.

10             We will allow, of course, for you to file

11   proposed findings of fact that will almost certainly be due

12   when you do your opening brief, but we'll talk about that

13   detail, and we will want some reasonable page limit on that

14   as well.

15             Are there any questions about the briefing?

16             MR. BLUMENFELD:  No, Your Honor.

17             MS. RURKA:  No, Your Honor.

18             THE COURT:  That was it in terms of what I saw

19   that may be in dispute.  I will go over some of the

20   mechanics of how we're going to run the trial which probably

21   won't be any surprise to any of you, but before I do that,

22   are there any other issues that the plaintiffs want to bring

23   up today?

24             MR. BLUMENFELD:  No, Your Honor.

25             THE COURT:  How about defendants?

```
 1              MS. RURKA:  No, Your Honor.

 2              MR. LOMBARDI:  No, Your Honor.

 3              THE COURT:  I'll try not to create any issues

 4   but let me say some of my standard things.

 5              In terms of the pretrial order, of course, if

 6   the parties did not identify a dispute and we haven't talked

 7   about it, then what you have in your pretrial order is

 8   acceptable to the court and will govern the case going

 9   forward.

10              In terms of uncontested facts, you will need to

11   submit those again formally in connection with your briefing.

12   There is no page limit on the number of uncontested facts and

13   they will become part of the evidentiary record upon your

14   submission of them.

15              It does not appear there is any dispute as to

16   what the factual issues are that are going to be tried in

17   this case or what the legal issues are.  You appear to be on

18   the same page as to what this trial is going to be about.

19              There is no issue with respect to damages.  In

20   terms of witnesses, examinations are limited to direct and

21   cross-examination and direct.  We don't allow recross

22   examination.

23              The presumption confirmed this morning is that

24   there will just be one lawyer questioning each witness for

25   each side with maybe one or two exceptions.  I trust that
```

1    plaintiffs will be made aware of those exceptions and as

2    long as it doesn't get out of hand, that will be just fine.

3         You need to ask for leave to approach a witness

4    once per witness.  Once you ask once, leave is freely granted

5    for the remainder of your examination of that witness.

6         In terms of testimony by deposition, the process

7    you have all set out is fine for identifying if there are

8    any objections.  Be sure that when you call the witnesses to

9    testify by deposition, you provide us with two copies of just

10   the excerpts of what you are playing from the deposition we're

11   reading so that we can follow along.

12        In terms of use of prior inconsistent testimony

13   for impeachment, if somebody were to have an objection that

14   you want more of it read or shown to the witness, make those

15   objections, I'll rule on them during the trial.

16        In terms of objections to expert testimony being

17   beyond the scope of what was previously disclosed, we will

18   rule on those objections during this trial.  In order for

19   me to be able to do that, make sure when you call your

20   expert witness you have with you two sets of the expert's

21   prior statements; that is, expert reports, declarations,

22   deposition testimony.  You don't necessarily have to hand

23   all that up when you call the witness but if there is an

24   objection from the other side that you have not elicited

25   testimony from beyond the scope what was previously

1    disclosed, I'll need you to hand up what was previously

2    disclosed and I will ask you to tell me where I can find

3    that this was previously disclosed; and we'll take a look

4    at it and we'll make a ruling during trial.

5            The clock will be running throughout this process.

6    Even were it to happen that I might need to leave the bench to

7    review in further detail whatever you have given me as the

8    prior statements, we will keep the clock running.  And we will

9    charge all of the time that it has taken to argue and decide

10   those objections to expert testimony to the party that does

11   not prevail on the objection.

12           This is somewhat different than a procedure that

13   some of you have seen me do in other trials.  Some of you

14   have seen me do this, some of you haven't.  Let me see if

15   there are any questions about how we're going to handle the

16   objections.  Mr. Blumenfeld?

17           MR. BLUMENFELD:  Not from the plaintiffs.

18           THE COURT:  Ms. Rurka or anybody from the

19   defense side?

20           MS. RURKA:  No, Your Honor.

21           THE COURT:  All right.  On the exhibits, we

22   already talked about this.  You basically set out with some

23   limited exceptions the maximum universe of exhibits as well

24   as the maximum universe of objections.  You're going to be

25   disclosing your exhibits for the most part to one another on

1    a witness-by-witness basis and talking about any objections,

2    if there are any remaining objections, as of the morning

3    that you expect to call the witness and use that exhibit

4    with them.

5              You need to, at the beginning of the day, bring

6    those objections to my attention.  They will be argued out

7    to the extent we can first thing in the morning.  I'll do my

8    best to rule on those objections at that point so that the

9    examinations can go smoothly.  And for those arguments about

10   objections, we do charge the time.  For those, we charge all

11   that time to the party that raises the objection regardless

12   of who wins or loses on that.

13             Before you rest your case, you should consult

14   with my deputies and make sure that everything you think has

15   been offered into evidence has in fact been tracked on our

16   list.  And I do need at some point, preferably at some point

17   during the examination of each witness but certainly at some

18   point before you rest your case, to have you formally offer

19   into evidence all of the exhibits that you are trying to

20   admit into evidence.

21             You don't need to necessarily lay a foundation

22   if there is no objection to the admission of a particular

23   exhibit, but you do need to take time at trial to show the

24   exhibit to a witness.  And, again, at some point you do

25   need to offer the exhibit by exhibit number into evidence.

1    I'll make sure for the record there is no objection at that

2    point to its admission, and then we'll admit those materials.

3              Are there any questions about any of that,

4    Mr. Blumenfeld?

5              MR. BLUMENFELD:  No, Your Honor.

6              THE COURT:  Ms. Rurka?

7              MS. RURKA:  No, Your Honor.

8              THE COURT:  The trial is timed.  You are going

9    to have 14 hours a side.  We've talked about that.  We

10   talked about post-trial briefing.

11             That is really pretty much it on my list.  Did I

12   generate any disputes or questions on the plaintiffs' side?

13             MR. BLUMENFELD:  No, Your Honor.  Thank you.

14             THE COURT:  No.  How about on the defendants' side?

15             MS. RURKA:  No, Your Honor.

16             THE COURT:  Well, Happy Halloween to everyone.

17   Safe travels, and we'll see you November 9th.

18             (Pretrial conference ends at 9:22 a.m.)

19

20        I hereby certify the foregoing is a true and accurate
     transcript from my stenographic notes in the proceeding.

21

22                         /s/ Brian P. Gaffigan
                           Official Court Reporter
23                          U.S. District Court

24

25